NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE APPLICATION OF ALPINE PARTNERS (BVI) L.P. FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN A FOREIGN PROCEEDING | Civ. Action No. 24-337 (KSH) (JSA)<br><br>MEMORANDUM OPINION AND ORDER[1] |

**JESSICA S. ALLEN, U.S.M.J.**

Before the Court is the motion of Respondent, Terrie Curran ("Respondent" or "Ms. Curran"), to quash a subpoena for deposition testimony issued *ex-parte* pursuant to 28 U.S.C. § 1782, and to vacate this Court's *ex-parte* Order, dated January 29, 2024 (the "January 29th Order"), that authorized service of the subpoena. (ECF Nos. 24, 36, 42, 47, 50, 51). Petitioner, Alpine Partners (BVI) L.P. ("Petitioner" or "Alpine"), opposes the motion. (ECF Nos. 35, 39, 43, 49, 52). No oral argument was heard, pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, and for good cause shown, Respondent's motion to quash is **DENIED**.

**I.      RELEVANT BACKGROUND AND PROCEDURAL HISTORY**

As alleged, Petitioner was a minority shareholder in Myovant Sciences Ltd. ("Myovant"), a Bermuda-based company that was delisted from the New York Stock Exchange and taken private

---

[1] The Third Circuit has not definitively addressed whether a magistrate judge's order on a Section 1782 application is dispositive. *See Arcelik A.S. v. E.I. Dupont De Memours & Co.*, 856 Fed. Appx. 392, 396 n.6 (3d Cir. 2021). However, the Court in *Arcelik* acknowledged that "the majority of district courts to consider this question have determined § 1782 orders are non-dispositive." *Id*. at 396 n.6 (citing *In re Hulley Enters. Ltd.*, 400 F. Supp. 3d 62, 71 (S.D.N.Y. 2019)); *see also In re Application of Mun*, 2023 WL 7074016, at *1 n.1 (D. Del. Oct. 26, 2023). Accordingly, this Court follows the majority of district courts, and thus issues this Memorandum Opinion and Order rather than a report and recommendation. However, to the extent the District Judge construes Respondent's motion as dispositive in nature, then this decision serves alternatively as the Undersigned's report and recommendation. *See In re Application of Mun*, 2023 WL 7074016, at *1 n.1.

on March 10, 2023. (*See* Declaration of Mark Chudleigh, ¶ 3 ("Chudleigh Decl."), ECF No. 4). Petitioner's shares were "forcibly canceled" through a $1.7 billion take-private merger orchestrated by Myovant's then-controlling shareholder, Sumitovant Biopharma Ltd. ("Sumitovant"). (*See* ECF No. 35 at 2). Petitioner received $27 for each of its shares. (Chudleigh Decl., ¶ 9). That price was approved by a special committee of three independent directors, selected by Myovant, to "evaluate the fairness of any proposal from Sumitomo[,] develop and negotiate the terms of any proposal[,] and identify available alternatives." (*Id.*, ¶ 10). Ms. Curran was one of three members of the special committee. (*Id.*, ¶¶ 7-10; *see also* ECF No. 35 at 3). According to Petitioner, the special committee "declined to pursue alternative offers . . . and voted to approve the merger." (ECF No. 35 at 3; *see also* Chudleigh Decl., ¶¶ 10-17). Petitioner disputes whether $27 was "fair value" and has sued Myovant in the Supreme Court of Bermuda (the "Bermuda Court"), exercising its appraisal rights under Section 106(6) of the Bermuda Companies Act and seeking to determine the fair value of its shares (herein, the "Appraisal Proceedings" or "Bermuda Proceedings").[2]

On January 19, 2024, Petitioner filed an *ex-parte* application in this Court, pursuant to 28 U.S.C. § 1782, seeking to serve a subpoena on Ms. Curran for her deposition and to compel her to produce documents regarding the merger and the fair value of Petitioner's shares (herein, the "Curran Subpoena"). (ECF No. 1; the "*ex parte* application").

Having reviewed the *ex-parte* application and supporting declarations, this Court entered the January 29th Order, granting, without prejudice, Petitioner's request to serve the Curran Subpoena. (*See* ECF No. 8). As detailed in the January 29th Order, this Court's decision was for

---

[2] When initiating the Bermuda Proceedings, Petitioner named Myovant as the Defendant. (*See* ECF No. 25 at 5 n.1). However, on June 13, 2023, Myovant merged with and into Sumitovant Biopharma Ltd., which subsequently changed its name to Sumitomo Pharma UK Holdings, Inc. ("Sumitomo"). (*See id.*)

2

the limited purpose of the initial *ex-parte* application. (*Id.* at 2). The January 29th Order further noted, "Ms. Curran retains all rights under the Federal Rules of Civil Procedure if she is served with the subpoena, including the right to file a motion to quash or modify the subpoena." (*Id.* at 3).[3] Thereafter, Petitioner served the Curran Subpoena on Respondent.

On March 8, 2024, Respondent filed the present motion to quash both the Curran Subpoena's request for Ms. Curran's deposition, as well as two categories of documents sought—text and chat messages (referred to as "Message Documents") and documents and communications in Ms. Curran's files and inbox (referred to as "Non-Message Documents"). (*See* ECF Nos. 24 & 25 at 3). On March 29, 2024, Petitioner filed its opposition. (ECF No. 35). Subsequent court rulings in the Bermuda Proceedings and in a parallel Section 1782 proceeding narrowed the scope of the motion. These rulings, along with a new "litigation cooperation agreement" between Respondent and Sumitomo, shifted the parties' arguments in support of their respective positions.

First, discovery rulings of the Bermuda Court in the Appraisal Proceedings rendered moot the requests for the Message and Non-Message Documents. (*See* ECF No. 36 at 1; *see also* Second Declaration of Brandt Haenslee, Esq., Ex. A; ECF No. 36-3).

Second, the parties submitted supplemental authority and legal arguments relating to a parallel Section 1782 proceeding in the United States District Court for the Middle District of Florida, captioned *Alpine Partners (BVI) L.P. v. Guinan*, 24-0005.[4] (*See* ECF Nos. 39, 42, "the

---

[3] Courts frequently issue Section 1782 orders on a preliminary, *ex-parte* basis without prejudice to the subpoenaed party's right to move to quash or modify any resulting subpoena. *See, e.g., In re Yilport Holding A.S.*, 2023 WL 2140111, at *3 (D.N.J. Feb. 21, 2023); *In re Mesa Power*, 2012 WL 6060941, at *4 (D.N.J. Nov. 20, 2012) ("Applications pursuant to 28 U.S.C. § 1782 are frequently granted *ex-parte* where the application is for the issuance of subpoenas and the substantial rights of the subpoenaed person are not implicated by the application. In addition, the subpoenaed person, once served, is entitled to move to quash or modify the subpoenas.") (citation omitted).

[4] The procedural events detailed herein resulted in the parties filing more than the three standard briefs permitted on a motion to quash, including a sur-reply brief, a sur-sur reply brief, and several supplemental letters. (*See* ECF Nos. 39, 42, 43, 47, 49, 50, 51 & 52). The Court, in its discretion, has considered all papers submitted in connection with the motion.

Florida Action"). In the Florida Action, the Honorable Kyle C. Dudek, U.S.M.J., entered an order on April 15, 2024, granting Alpine's request, made pursuant to Section 1782, to depose Ms. Curran's special committee co-member, Mark Guinan, in Florida, in connection with the Bermuda Proceedings. *See In re Alpine Partners (BVI) L.P.*, 2024 WL 2868393 (M.D. Fla. Apr. 15, 2024); *see also* ECF No. 39 (the "First Florida Decision"). Judge Dudek's Order was entered following briefing and arguments raised in this case.[5] Thereafter, Guinan appealed the First Florida Decision, (ECF No. 42, Ex. A), which was affirmed by the Honorable Sheri Polster Chappell, U.S.D.J. on May 23, 2024. *See In re Alpine Partners (BVI) L.P.,* 2024 WL 2868457 (M.D. Fla. May 23, 2024); *see also* ECF No. 43 (the "Second Florida Decision").[6]

Third, by letter filed on June 18, 2024, Respondent advised this Court that she had executed a "litigation cooperation agreement" with Sumitomo, that "formalizes [an] agreement to appear as a witness and testify in the Bermuda proceedings." (ECF No. 47 at 1). According to Respondent, the litigation agreement confirms she will appear and testify at trial in Bermuda, rendering any Section 1782 deposition in the United States unnecessary. (*Id.*) Petitioner responded that the litigation cooperation agreement "changes nothing" and has no bearing on the propriety of a pretrial deposition in the United States. (ECF No. 49 at 2).

Based on the foregoing, at this time, a single issue remains for this Court to resolve: whether Ms. Curran should be required to appear for a deposition in New Jersey pursuant to Section 1782.

---

[5] Mr. Guinan is represented by the same counsel as Mr. Curran, and the briefing in this case and the Florida Action are "virtually identical, and at times verbatim." (ECF No. 39 at 2). And, in fact, Respondent's counsel sought leave to file a sur-reply in the Florida Action to coordinate the briefing between the Florida Action and this case specifically to avoid inconsistent judicial decisions. (*See* Declaration of Michael J. Sullivan, Esq., Ex E at 2-3).

[6] Mr. Guinan has since appealed the Second Florida Decision to the United States Court of Appeals for the Eleventh Circuit. (*See* ECF No. 47, Ex. A).

## II. LEGAL STANDARD

Section 1782 is designed "to facilitate the conduct of litigation in foreign tribunals, improve international cooperation in litigation, and put the United States into the leadership position among world nations in this respect." *In re Bayer AG*, 146 F.3d 188, 191–92 (3d Cir. 1998), as amended (July 23, 1998). The statute authorizes district courts to order discovery from United States residents for use in foreign proceedings. *See* 28 U.S.C. § 1782; *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). Courts review Section 1782 applications using two sets of factors—one statutory and one discretionary. *See In re Poblete*, 2024 WL 3738554, at *3 (D.N.J. Aug. 9, 2024) (citing *SPS Corp. I v. Fundo De Investimento, et al.*, 110 F.4th 568, 591 (3d Cir. 2024)).

The statutory requirements an applicant must establish for a discovery subpoena under Section 1782 are: "(1) the person from whom discovery is sought resides [or is found] in the district; (2) the request seeks the 'testimony or statement' of a person or the production of a 'document or other thing'; (3) the discovery is for use in proceedings before a foreign or international tribunal; and (4) the application is made by either a 'foreign or international tribunal' or by an 'interested party.'" *In re O'Keeffe*, 646 Fed. Appx. 263, 265 n.4 (3d Cir. 2016).

If the statutory requirements of Section 1782 are met, the statute "authorizes, but does not require, a federal district court" to allow the discovery. *See Kulzer v. Esschem, Inc.*, 390 Fed. Appx. 88, 92 (3d Cir. 2010). The Supreme Court has identified four factors that are relevant to this discretionary decision:

> [1] Whether the documents or testimony sought are within the foreign tribunal's jurisdictional reach, and thus accessible absent § 1782 aid;
> [2] The nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign

5

>government or the court or agency abroad to U.S. federal-court judicial assistance;
>[3] Whether the § 1782 request conceals an attempt to circumvent foreign proof gathering restrictions or other policies of a foreign country or the United States; [and]
>[4] Whether the subpoena contains unduly intrusive or burdensome requests.

*Intel*, 542 U.S. at 264–65 (brackets added).

"The *Intel* factors are not to be applied mechanically." *Kiobel v. Cravath Swaine & Moore, LLP*, 895 F.3d 238, 245 (2d Cir. 2018). Accordingly, "[n]o single *Intel* factor is dispositive, or should be given more weight than the others." *In re Polygon Global Partners LLP*, 2021 WL 2117397, at *4 (S.D.N.Y. May 25, 2021) (citing *Marubeni America Corp. v. LBA Y.K.*, 335 Fed Appx. 95, 97 (2d. Cir. 2009)); *see also In re Application of CBRE Global Investors* (NL), 2021 WL 2894721, at *9 (S.D.N.Y. July 9, 2021) ("No single *Intel* factor is alone dispositive, and the [c]ourt must balance the various factors and other pertinent considerations in determining whether to exercise its discretion."). At this step, "[c]onsistent with ... Congress's goal of providing equitable and efficacious discovery procedures, district courts should treat relevant discovery materials sought pursuant to § 1782 as discoverable unless the party opposing the application can demonstrate facts sufficient to justify the denial of the application." *In re Bayer AG*, 146 F.3d at 195; *see also In re Selman*, 2024 WL 1092025, at *2 (D. Del. Mar. 13, 2024).

Ultimately, a Section 1782 application is a motion that comes within the Court's broad discretion. *See, e.g.*, *LAE Technologies Hong Kong Ltd. v. Demuren*, 2024 WL 863464, at *1 (D.N.J. Feb. 29, 2024) ("whether discovery is permitted under § 1782(a) lies within the broad discretion of the Court"); *In re Petition of the Republic of Turkey,* 2020 WL 4035499, at *2 (D.N.J. July 17, 2020) ("In considering the *Intel* factors, a district court retains broad discretion to determine whether judicial assistance is warranted."). Given that broad discretion, in considering

Section 1782 motions, the district court is "not required to address explicitly every factor or argument, nor [is] it required to issue a written order." *Akebia Therapeutics, Inc. v. FibroGen, Inc.*, 793 F.3d 1108, 1112 (9th Cir. 2015); *see In re Mun,* 2023 WL 7074016, at *3 ("*Intel* does not mandate that every factor support a court's exercise of discretion or that all factors need even be considered.").

## III. ANALYSIS

Respondent does not contest that the statutory requirements for Section 1782 applications have been met.[7]  Instead, Respondent's primary argument is that the first *Intel* factor weighs against discovery, and thus the Curran Subpoena should be quashed based on the first factor. (*See* ECF No. 25 at 16-18; ECF No. 36 at 2-8). As a secondary argument—made for the first time in her reply brief—Respondent contends that the fourth *Intel* factor also weighs against discovery. (ECF No. 36 at 10-11).[8]  Given the parties' arguments focus primarily on the first *Intel* factor, the Court begins by addressing that factor separately, bearing in mind that no single *Intel* factor should be given more weight than the others or be dispositive of the balancing analysis. *See Marubeni America Corp.*, 335 Fed Appx. at 97.

### A. THE FIRST *INTEL* FACTOR

The first *Intel* factor "asks whether the discovery sought is 'unobtainable' in the foreign forum because it is outside of the foreign tribunal's jurisdictional reach." *SPS Corp. I*, 110 F.4th at 592 (citing *Intel*, 542 U.S. at 592). Under this factor, it is the foreign court's "jurisdictional

---

[7] This Court independently finds that the statutory requirements have been met. Ms. Curran is a resident of New Jersey, and therefore, is "found" in this district. The Curran Subpoena seeks testimony, which is authorized by the statute. The discovery is being sought for use in the Bermuda Proceeding. Finally, the discovery is sought by an interested party to the foreign proceeding, i.e., Petitioner (*see* ECF No. 2 at 10-12).

[8] In her opening brief, Respondent had argued the fourth *Intel* factor only as to Petitioner's requests for documents, not for a deposition. (*See* ECF No. 25 at 23-27).

7

reach" that matters, "not simply whether the party from whom discovery is sought is a participant to the foreign proceedings." *SPS Corp. I*, 110 F.4th at 592.

Respondent argues that the first *Intel* factor supports quashing the Curran Subpoena because her testimony is available in the Bermuda Proceedings, and thus, is within the Bermuda Court's reach. (ECF No. 25 at 16-17; ECF No. 36 at 4). According to Respondent, she "will testify in the Bermuda Proceedings" if requested by Sumitomo, (ECF No. 42 at 4; *see also* ECF Nos. 25 at 2-3, 12, 16 & ECF No. 36 at 1-4), because she is contractually obligated to provide such trial testimony pursuant to the litigation cooperation agreement. (*See* ECF No. 50 at 1). According to Respondent, because her testimony is "in the possession of a party subject to jurisdiction" in Bermuda (i.e., Sumitomo), the discovery is within the Bermuda Court's jurisdictional reach. (ECF No. 47 at 1; ECF No. 51 at 1). Respondent contends that because she has voluntarily agreed to testify at trial in Bermuda, a pretrial deposition in the United States is duplicative and unnecessary. (*See* ECF No. 25 at 17). Finally, Respondent contends that authorizing a pretrial deposition in this case would needlessly proliferate Section 1782 discovery proceedings and subject every witness in the United States involved in a foreign proceeding to cross-examination twice, once at deposition and a second time at trial. (ECF No. 36 at 9; ECF No. 42 at 3).

Petitioner counters that Respondent is indisputably not a participant to the Bermuda Proceedings, is not employed by any party to the Bermuda Proceedings, and is not a resident of Bermuda, and thus is not subject to the Bermuda Court's jurisdiction. (ECF Nos. 35 at 2, 6-7; ECF No. 49 at 1-2). According to Petitioner's expert on Bermuda law, the Bermuda Court does not have the power to order Ms. Curran to sit for a deposition. (*See* ECF No. 49 at 2, citing Second Declaration of Mark Chudleigh, Esq. at ¶¶ 26-30, ECF No. 35-1). Respondent offers no rebuttal. Thus, Petitioner submits that Respondent's entry into a voluntary litigation cooperation agreement

8

with Sumitomo "changes nothing," as it does not confer jurisdiction over Ms. Curran. (ECF No. 49 at 2). Petitioner contends, crucially, that, even assuming the Bermuda Court *could* compel Ms. Curran's *trial* testimony, the Bermuda Court indisputably *could not* compel the actual discovery sought through the present application, which is *pretrial deposition testimony*. (ECF No. 49 at 2-3) (certain emphasis added). According to Petitioner, Respondent's willingness to provide voluntary trial testimony is not a replacement for pretrial deposition testimony, which has an "independent purpose of discovering evidence and preserving testimony in a manner that cannot be accomplished at trial." (ECF No. 49 at 3). Finally, Petitioner argues that Respondent's arguments are "virtually identical, and at times verbatim," to the arguments rejected by the court in the Florida Action. Therefore, this Court should "follow the reasoning of the court in the Florida Action," to avoid inconsistent results. (ECF No. 39 at 4).

This Court finds that the first *Intel* factor weighs in favor of allowing the requested discovery. Respondent brushes completely past three important but related dynamics that lead the Court to this conclusion.

One, there is a distinction between the deposition testimony sought in Petitioner's application and the trial testimony that Ms. Curran has voluntarily offered to provide in Bermuda pursuant to a contract with Sumitomo. It is axiomatic that a pretrial deposition serves a different function than cross-examination at trial. And the discovery sought here is a *pretrial deposition* noticed to gather evidence, whether ultimately admissible or not, and to preserve testimony ahead of a trial. (*See* ECF No. 49 at 2-3). Two, there is no dispute that Respondent, a non-party to the Bermuda Proceedings, has testimony relevant to the Bermuda Proceedings. And Respondent alone possesses this testimony. The Respondent's contention that Sumitomo, by virtue of the litigation agreement, has possession of the testimony sought in Petitioner's application is simply not true.

9

Petitioner does not seek Sumitomo's testimony but rather Respondent's testimony in the instant dispute before this Court. And third, as Petitioner's expert represents—and Respondent does not refute—the Bermuda Court does not have jurisdiction over Ms. Curran to compel her pretrial deposition. Indeed, Ms. Curran acknowledges that the litigation agreement is between her and Sumitomo, who is the one subject to the Bermuda Court's jurisdiction. (*See* ECF No. 51). Further, the Court's review of the agreement confirms that it contains no provision detailing Ms. Curran's consent to the Bermuda Court's jurisdiction. (*See* ECF No. 47, Ex. B). As a result, if Ms. Curran refused to testify (or is rendered incapacitated to testify) in the Bermuda Proceedings, it appears the Bermuda Court will have no jurisdiction to enforce the terms of the agreement. As the Florida Court determined, *Intel* requires only that discovery "*may* be unobtainable" absent Section 1782 aid. *See id*. at 264 (emphasis added). Absent the Bermuda Court's express jurisdiction over Ms. Curran, it cannot be definitively established that her testimony—pretrial or otherwise—is within the Bermuda Court's jurisdictional reach, and thus accessible absent Section 1782 aid. In short, the discovery sought through Petitioner's application is not within the Bermuda Court's "jurisdictional reach." *SPS Corp. I*, 110 F.4th at 592.

Respondent's reliance on several cases, (*see* ECF No. 36 at 3-5), does not compel a different result. As the Florida Court stated, case law interpreting the first *Intel* factor is not uniform, and the notion that the Court must address every non-binding case relied on by a party is "absurd." (Second Florida Decision at 4-5); *see also Revlon, Inc. v. Zena Trading, A.G.*, 1986 WL 15616, at *3 (D.N.J. July 25, 1986) (Debevoise, J.) ("I shall not analyze each of the remaining, non-binding cases the parties rely on, which do not alter my conclusions. Guidance from the Third Circuit, and not an endless review of arguably analogous cases, is needed."). Putting that aside, none of the cases Respondent cites are persuasive.

10

First, while the court in *In re Pinchuk*, 2014 WL 1745047 (S.D. Fla. Apr. 30, 2014), concluded that the respondent's representation that he would appear as a witness in a foreign court was "sufficient" to quash a subpoena, *id.*, at *2, both the First and Second Florida Decisions declined to follow *Pinchuk*. Further, *Pinchuk* does not address the fundamental difference between deposition testimony and trial testimony; moreover, the foreign tribunal in *Pinchuk* had the authority to order a witness to provide pretrial testimony, which is not the case here. *See id*. at *1.

Next, the court in *In re Application of Venequip*, 83 F.4th 1048 (7th Cir. 2023), merely affirmed the district court's discretionary conclusion that an agreement to cooperate in the foreign proceeding lessened the need for Section 1782 discovery. *See id*. at 1056. Thus, *Venequip* stands for the uncontroversial proposition that a district court's discretionary determination in the context of Section 1782 is entitled to deference.

Finally, in *In re Application of Leret*, the district court simply noted that the magistrate judge had "considered the specific facts of the application," and that it was not an abuse of discretion to conclude "that allowing a willing party to make himself available for discovery requests in the country and court where the underlying legal disputes are being litigated was the most effective way to carry out the twin aims of [Section 1782]." 51 F. Supp. 3d 66, 71 (D.D.C. 2014). Thus, *Leret* stands for the proposition that a reviewing court has discretion in evaluating the facts of a given Section 1782 application. Moreover, here, unlike in *Leret*, Ms. Curran has not offered to make herself available for discovery requests anywhere, let alone in Bermuda.

In any event, Petitioner relies on cases that support compelling a discovery deposition in the United States. (*See* ECF No. 49 at 2, Ex. 1, citing *Fourworld Event Opportunities, L.P. v. Dodds*, Civ. A. No. 22-18 (D.D.C. Apr. 21, 2023); *see also FourWorld Event Opportunities, LP*

11

*v. Houlihan Lokey, Inc.*, 21-1019 (N.D. Cal. Dec. 31, 2021), attached to Declaration of Mark C. Davies, Esq., as Ex. 2; ECF No. 35-2).

For the above reasons, this Court finds the first *Intel* factor weighs in favor of allowing Petitioner to proceed with the Curran Subpoena for deposition testimony. Moreover, even if the first *Intel* factor weighed against the discovery sought, the Court's analysis would not end. *See, e.g.*, *In re Application of the Coal. to Protect Clifton Bay & Louis Bacon*, 2014 U.S. Dist. LEXIS 152520, *9 (S.D.N.Y. Oct. 28, 2014) ("Even assuming, however, that the first *Intel* factor can weigh against granting a petition when the respondent may appear as a nonparty witness in the foreign proceedings, in this case that factor does not weigh so strongly as to end the analysis.").

### B.   THE REMAINING *INTEL* FACTORS

Turning to *Intel* factors two through four, this Court concludes that they support the Court's exercise of discretion to allow Petitioner to proceed with the deposition sought in this case.

The second *Intel* factor asks courts to consider "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *In re O'Keeffe*, 646 Fed. Appx. at 266. Respondent does not address the second *Intel* factor. This Court's review of the relevant case law confirms that courts in Bermuda are receptive to Section 1782 discovery. *See, e.g.*, *In re Oasis Core Investment Funds Ltd.*, 2024 WL 472984, at *2 (S.D.N.Y. Feb. 7, 2024); *In re Mun*, 2023 WL 7074016, at *4; *see also In re Winston Wen-Young for Assistance before a Foreign Tribunal*, Civ. A. No. 21-8627, ECF No. 16 at 38:13-15, ECF No. 19 (D.N.J. June 15, 2021). Moreover, the Respondent submits a declaration that represents that courts in Bermuda are receptive to deposition testimony. (*See* Chudleigh Decl., ¶¶ 42-49; ECF No. 4). Thus, this factor weighs in favor of Petitioner.

The third *Intel* factor considers whether a Section 1782 applicant is trying to circumvent "foreign proof gathering restrictions or other policies of a foreign country." *In re Poblete*, 2024 WL 3738554, at *8. Respondent does not address the third *Intel* factor. In all events, this Court does not discern any basis to conclude that Petitioner is attempting to circumvent foreign proof-gathering restrictions by seeking Ms. Curran's deposition. Accordingly, the third *Intel* factor weighs in favor of allowing the discovery sought.

The fourth and final *Intel* factor requires courts to consider whether the discovery sought is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. The Federal Rules of Civil Procedure apply to determining whether to permit discovery pursuant to Section 1782 applications. *See In Ex Parte Glob. Energy Horizons Corp.*, 647 Fed Appx. 85, 86 (3d Cir. 2016). "Assessment of the fourth factor is virtually identical to the familiar 'overly burdensome analysis that is integral to the Federal Rules.'" *California State Tchrs. Ret. Sys. v. Novo Nordisk, Inc.*, 2020 WL 6336199, at *10 (D.N.J. Oct. 29, 2020) (quotation omitted). Thus, the requested discovery must be reasonably calculated to lead to the discovery of admissible evidence, consistent with Rule 26(b)(1), and avoid imposing undue burden or expense on the subpoenaed entity, pursuant to Rule 45(d).

Respondent contends that since she has agreed to provide testimony in the Bermuda Proceedings "it would be unduly and needlessly burdensome to require her to testify twice in two different countries under two sets of laws." (ECF No. 36 at 10). However, this argument is made for the first time on reply, and thus, the Court would be within its rights to disregard it. *See, e.g.*, *Schiffli Embroidery Workers Pension Fund v. Ryan, Beck & Co.*, 869 F. Supp. 278, 281 n.1 (D.N.J. 1994) ("This Court will not usually consider arguments raised for the first time in a reply brief ...."). In fact, the same argument was raised for the first time in reply in the Florida Action, and Judge Dudek declined to consider it. (*See* ECF No. 37-2, Ex. B). Nevertheless, even if this Court

13

were to reach the merits, there is no dispute that Ms. Curran has information relevant to the Bermuda Proceedings, within the meaning and contemplation of Rule 26. Further, the Court does not discern—and Respondent does not identify—any undue burden, cost, or expense that would result from sitting for deposition in New Jersey, where she resides, consistent with the Federal Rules of Civil Procedure. *See, e.g.*, *Gutierrez v. Johnson & Johnson, Inc.*, 2002 WL 34717245, at *3 (D.N.J. Aug. 13, 2002) ("absent extraordinary circumstances, it is an error for a court to prevent the taking of a deposition"); *Conti v. American Axle and Mfg., Inc.,* 326 Fed. Appx. 900, 907 (6th Cir. 2009) ("Absent any substantive basis to support [proposed deponent's] hardship claim, and in light of [proposed deponent's] likely knowledge of information relevant to [plaintiff's] claims, we find that the denial of [plaintiff's] deposition request was an abuse of discretion.").

Based on the foregoing reasons, the Court finds that the *Intel* factors weigh in favor of allowing discovery pursuant to Section 1782.[9]

---

[9] The Court briefly comments on Respondent's argument that, if her deposition is allowed, it would result in nearly every United States resident third-party witness having to give testimony two times in every foreign case, once in a Section 1782 deposition and a second time at trial. (*See* ECF No. 36 at 9; ECF No. 42 at 3). Guinan made the identical argument in Florida. The Florida Court described his "parade of horribles" as "irrelevant to whether the facts of this case support compelling [his] deposition." (Second Florida Decision at 5). This Court finds the Florida Court's reasoning persuasive. To be clear, this Court's findings and conclusions are based solely on the record presented in this case and thus do not endorse an automatic rule compelling a discovery deposition in response to every Section 1782 application.

## IV. CONCLUSION

For the reasons set forth above, Respondent's motion to quash, (ECF No. 24), is **DENIED**. The parties are directed to meet-and-confer to jointly select a date, time, and location for Ms. Curran's deposition.

The Clerk of the Court is requested to terminate the motion appearing at ECF No. 24.

**SO ORDERED**.

s/Jessica S. Allen
**Hon. Jessica S. Allen**
**United States Magistrate Judge**

Dated:  September 27, 2024

cc:  Hon. Katharine S. Hayden, U.S.D.J.